IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 06-447-1 |
| | : | CIVIL ACTION NO. 11-5192 |
| BRIAN J. NEWMARK | : | |

**M E M O R A N D U M**

PRATTER, J.                                                                                       DECEMBER 21, 2011

**INTRODUCTION**

       The jury that received a wealth of testimonial and documentary evidence, listened carefully to artfully crafted advocacy and applied both law and common sense to everything presented at an eight-day trial convicted Brian Newmark of wire fraud. The substance of the facts of the prosecution was that Mr. Newmark and others schemed, in part by creating the impression that they were attorneys, to convince two elderly brothers to invest in certain inappropriate financial products that had merely illusory "benefits."[1] He was sentenced to serve 24 months in prison but did not begin to serve his sentence until his arguments on appeal were rejected by the Court of Appeals.[2]

---

[1] Detailed recitations of the trial evidence and arguments appear in both this Court's Memorandum and Order of April 4, 2008 in which Mr. Newmark's various post-trial motions were addressed, and the unpublished opinion of the Third Circuit Court of Appeals, United States v. Newmark, 374 Fed. Appx. 279, 2010 WL 850200 (3d Cir. 2010) (unpublished opinion), in which Mr. Newmark's appeal was denied.

[2] As will be referenced in this Memorandum, Mr. Newmark made an argument on appeal that reappears here in this indirect appeal, namely, the role, if any, in the rendering of the guilty verdict of the absence of an "ordinary prudence" jury instruction from the lengthy instructions overall.

Now Mr. Newmark invokes 28 U.S.C. §2255 and asks the Court to set aside his conviction. He claims that his trial counsel was ineffective for failing to demand a jury instruction that a criminal fraud scheme must be one reasonably calculated to deceive persons of ordinary prudence and comprehension.

Mr. Newmark's latest effort is governed by the demands of Strickland v. Washington, 466 U.S. 668 (1994), which requires Mr. Newmark to show that his trial counsel's services fell below an objective standard of reasonableness and that he suffered a prejudice because of that shortcoming. Mr. Newmark has done neither, and his motion must fail.

**DISCUSSION**

Ronald Levine, a private practitioner with significant criminal trial experience both as a prosecutor and as a defense counsel, served as Mr. Newmark's counsel from the inception of the case until the time of sentencing. Mr. Levine testified at a hearing the Court elected to have in this matter in consideration of the issues raised now in the §2255 motion.[3] No other witness was called by any party.

As was made clear through the questioning by both Mr. Newmark's new counsel and the Government prosecutor, Mr. Levine approached his preparation and performance for Mr. Newmark's case at trial with unrelenting professionalism and proficiency. His choices of what themes and what arguments to pursue or to reject appeared to be products of clear thinking and

---

[3]The Court held a hearing on November 17, 2011 as a matter of discretion. It was by no means mandatory that a hearing be held, although the Court believes the scheduling of a hearing benefitted all interested persons. Mr. Levine was the sole witness called during the hearing. Mr. Newmark avoided personally confronting his former lawyer as his new counsel attacked his former trial counsel's performance. Mr. Newmark elected to waive being present for this hearing.

reasonable choices. He was neither unmindful of precedent nor afraid to chart new territories. As observed by the Court during the trial, Mr. Levine proved to be a worthy, fully engaged adversary for an equally tried, true, skilled and dedicated prosecutor (and, of course, vice versa).

That the jury ultimately convicted Mr. Newmark cannot be said credibly to have been brought about by any of the bases for the criticism Mr. Newmark now levies against Mr. Levine. Indeed, the Court finds that Mr. Levine's conduct of the trial as Mr. Newmark's defense counsel was effective. In so concluding, the Court is constrained to point out that Mr. Levine also needed to calibrate his approach to the defense of Mr. Newmark with his assessment of the strategy, tactics and arguments of a co-defendant whose role in the underlying fact pattern was not insignificant and who took an active role in the trial. Moreover, the Court is mindful of - - and reminds Mr. Newmark of - - the admonition that "[legal] representation is an art, and an act of omission that is unprofessional in one case may be sound or even brilliant in another." Strickland, 466 U.S. 693. See also, id. at 689. A trial lawyer deserves to be reasonably free from interference with the professional prerogatives to exercise his or her judgment on behalf of a client and, accordingly, to have protection from the unfounded accusations of disappointed criminal defendants who hope to regain lost freedom by accusing, without actual justification, the lawyer of being ineffective, or worse. Additionally, as a reasonable check on the post-conviction flood of applications to have second and third bites of the trial apples, it is clear that the Sixth Amendment does not require counsel to be a perfect artist or any given trial to be a thing of beauty to the defense eye or ear. Second-guessing may be an inevitable activity for someone like Mr. Newmark, but the Constitution requires something considerably more. See Strickland, at 689.

In this case, Mr. Levine's conduct of the trial as Mr. Newmark's counsel requires no apologia, excuses or overly indulgent review to justify his performance. He had a legitimate and reasonable theory and strategy for his client's defense, he was mindful of governing case law, and he possessed more than appropriate skills to be effective counsel. That his efforts were, from Mr. Newmark's vantage point, unsuccessful certainly does not make Mr. Levine ineffective for constitutional purposes.

Accordingly, Mr. Newmark has not - - and, in the judgment of the Court that presided over the trial, could not - - satisfy the first prong of <u>Strickland,</u> namely, the requirement of a finding that counsel's conduct fell below an objective standard of reasonableness.

Under <u>Strickland</u>, Mr. Newmark's failure to sustain his burden as to the first prong ends the inquiry. However, in view of the intensity of the efforts of counsel, the Court will address the second <u>Strickland</u> prong, namely, whether a mistake by counsel visited upon the lawyer's client such prejudice that it could be said that counsel's deficiency created a "reasonable probability" that "the outcome [of the trial] would have been different," but for that deficiency. <u>Strickland</u> at 694.

Here, Mr. Newmark argues that Mr. Levine's not having demanded from the Court a so-called "ordinary prudence" instruction constituted the offending deficiency - - a conclusion already rejected. But, assuming that the decision amounted to a <u>Strickland</u> deficiency, Mr. Newmark would need to explain how counsel's failure to insist on that instruction rises (or, rather, falls) to the requisite level of prejudice. This means that Mr. Newmark would have to show (1) that if Mr. Levine had asked for the instruction, the Court would have included it, and (2) that if the instruction was given, at least one juror would have seized on it to (or would have

4

felt compelled to) resist his or her fellow jurors' views of Mr. Newmark's guilt to bring about a mistrial or, à la the Henry Fonda character in "Twelve Angry Men," win all 11 other jurors over to vote for acquittal.[4] This Mr. Newmark cannot do.

The Court of Appeals in this case has already concluded from an appellate review posture that the omission of the "ordinary prudence" instruction "did not prejudice the jury's deliberation." Newmark, 2010 WL 850200, 3 n.2. In finding that the absence of the "ordinary prudence" instruction for Mr. Newmark's trial did not amount to a "plain error," the Court of Appeals explained that a "plain error" is one that affects substantial rights, i.e., one that prejudices the jury's verdict. Newmark, 2010 WL 850200, 3, citing Johnson v. United States, 520 U.S. 461, 466-67 (1997). This Court realizes that Mr. Newmark is at pains to parse the Court of Appeals' opinion rejecting his direct challenge in a fashion to find some daylight for his §2255 arguments now. However, to do so produces only the most artificial, indeed, illusory, opening that is firmly closed by the straight-forward syllogism: (1) if a plain error is one that is substantial enough to affect the verdict and (2) if the omission of the instruction is not plain error, then the omission was not substantial enough to affect the verdict and, hence, was not "prejudicial." Even though the case law under the Strickland prejudice rubric is not uniformly fungible in all regards and for all purposes with the "plain error review" cases invoked for direct appeal, the Court finds the useful interchange of the material concepts inescapable in this case.

---

[4]Alternatively, at least theoretically, another option would be for Mr. Newmark to prove that the failure to object to the trial court not having included that instruction meant that Mr. Newmark lost an otherwise likely appellate reversal. Given that the Court of Appeals already concluded that the failure to give the desired instruction was not a "plain error" or otherwise merited a reversal of the conviction, this optional argument is not analytically available to Mr. Newmark.

This is so all the more so because, as Mr. Levine pointed out in his testimony, the "ordinary prudence" instruction was not a lynchpin for the Newmark defense theory of the case, and other aspects of the Court's jury instruction provided concepts for the jury to embrace on Mr. Newmark's behalf if the evidence presented had allowed it.  Weighing the facts presented in this case, the abundant reasons available to the jury to reject the factual arguments Mr. Newmark tried to advance, particularly given the facts attendant to the Newmark-Morgan Stanley communications and the testimony of the surviving victim of the scheme, as well as the other comprehensive jury instructions, the Court concludes that Mr. Newmark has fallen far short of delineating any prejudice to him flowing from the absence of the "ordinary prudence" language in the jury instruction.

**CONCLUSION**

For the foregoing reasons the Motion of Brian Newmark to Vacate Conviction and sentencing is denied, as confirmed in the accompanying Order.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge